**VENTAS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 01–310T.**

United States Court of Federal Claims.

July 30, 2003.

Michael C. Durney, Washington, D.C., for plaintiff.

Jennifer Dover Spriggs, with whom were Assistant Attorney General Eileen J. O'Connor, Chief Mildred L. Seidman, and Assistant Chief David Gustafson, Court of Federal Claims Section, Tax Division, U.S. Department of Justice, Washington, D.C., for defendant.

### OPINION

WIESE, Judge.

This case is before the court on cross-motions for summary judgment. At issue is whether plaintiff is entitled to a refund of additional income taxes assessed with respect to tax years 1990, 1991, and 1992. For the reasons set forth below, defendant's motion for summary judgment is granted and plaintiff's cross-motion is denied.

### FACTS

Plaintiff, Ventas, Inc., is a real estate company that owns and leases hospitals, nursing centers, and personal care facilities throughout the United States. Plaintiff is successor-in-interest to a 1995 merger between Vencor, Inc., and the Hillhaven Corporation. The merged entity was renamed Ventas on or about May 1, 1998.

In October 1997, plaintiff received notice from the Internal Revenue Service ("IRS") of assessed income tax deficiencies for the 1990, 1991, and 1992 tax years in the amounts of $199,471, $677,985, and $723,199, respective-

ly. The IRS determined that plaintiff had miscalculated its alternative minimum tax liability and as a result had underpaid its income taxes for the years at issue. In May 1988, plaintiff paid the assessed deficiencies and thereafter filed amended corporate income tax returns (Forms 1120X) seeking a refund for each of those years. The IRS denied plaintiff's claims. Plaintiff now sues to recover $1,600,655 in assessed income taxes, $7,461 in assessed penalties, and $1,159,396 in assessed and statutory interest.

## DISCUSSION

Section 55 of the Internal Revenue Code (the "Tax Code") imposes upon all taxpayers an alternative minimum tax "in addition to" all other taxes imposed by subtitle A. I.R.C. § 55(a).[1] The purpose of the alternative minimum tax is to ensure that "no taxpayer with substantial economic income [is] able to avoid all tax liability by using exclusions, deductions and credits." S.Rep. No. 97–494, at 108 (1982), *reprinted in* 1982 U.S.C.C.A.N. 781, 876 (accompanying the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, 96 Stat. 324).

The alternative minimum tax is an income tax, set at a fixed rate lower than the highest regular income tax rate, that applies to a tax base substantially broader than the tax base for regular income and that is intended to approximate true economic income as closely as possible. *See* H.R.Rep. No. 99–426, at 308 (1986) (accompanying the Tax Reform Act of 1986) (describing alternative minimum taxable income as an amount that "more nearly approximat[es] ... economic income" than does regular taxable income); *see also* 4 Boris I. Bittker & Lawrence Lokken, Federal Taxation of Income, Estates and Gifts ¶ 111.4.1 (2d ed.1992) (defining alternative minimum taxable income as regular taxable income "adjusted to eliminate the benefits of many tax allowances that cause taxable income to diverge from economic income").

In determining whether the alternative minimum tax applies for a given tax year, a taxpayer must construct its alternative minimum taxable income and then calculate a tentative minimum tax based on that income as set forth in section 55(b).[2] The result of this calculation is compared to the taxpayer's regular income tax liability for that year. If the alternative minimum tax liability exceeds the regular tax liability for the taxable year, then section 55 imposes a tax equal in amount to the difference between the two taxes that is to be paid in addition to the taxpayer's regular income tax. I.R.C. § 55(a).

The dispute in this case centers on the proper method for calculating alternative minimum taxable income, the tax base for the alternative minimum tax. Section 55 defines "alternative minimum taxable income" as "the taxable income of the taxpayer for the taxable year ... determined with the adjustments provided in section 56 and section 58, and ... increased by the amount of the items of tax preference described in section 57." I.R.C. § 55(b)(2). In defendant's view, the phrase "taxable income of the taxpayer for the taxable year" refers to the taxpayer's regular taxable income as reported on its income tax return. Plaintiff argues, however, that the phrase refers instead to a taxable income base that may include deductions not identical to those claimed in the computation of regular taxable income.

In assessing the correctness of these positions, we begin with those sections of the Tax Code that plaintiff relied upon to determine both its regular income tax and alternative minimum tax bases. During the tax years at issue, section 51(a) provided a "targeted jobs tax credit" which permitted a taxpayer to treat a portion of its payroll costs associated with the employment of certain disadvantaged individuals as a credit against its regular income tax.[3] Pursuant to that section,

---

1. The Internal Revenue Code comprises Title 26 of the United States Code.

2. The tentative minimum tax for a corporation is 20 percent of the alternative minimum taxable income over an exemption amount of $40,000,

reduced by the alternative minimum tax foreign tax credit. I.R.C. § 55(b)(1)(B), (d)(2).

3. Section 51(a) has since been amended and the "targeted jobs tax credit" is now referred to as the "work opportunity tax credit." I.R.C. § 51(a), *amended by* the Small Business Protection Act of

plaintiff reduced its regular income tax liability by the amount of the credit but, as directed by section 280C(a), correspondingly reduced its wage-based deductions by the same amount so as to avoid a double tax benefit (both a deduction and a credit) from the same item of cost.[4]

It is undisputed that the targeted jobs tax credit was available only as a credit against the regular income tax and could not be used as a credit against the alternative minimum tax.[5] For this reason, plaintiff calculated its alternative minimum taxable income by recapturing that portion of its deductible payroll costs that, in the calculation of regular taxable income, it had relinquished in favor of the tax credit amount. Thus, in the calculation of the two taxes—the regular income tax and the alternative minimum income tax—plaintiff relied on two different income bases—the base for the former excluded a portion of deductible labor costs; that for the latter included those costs.

The IRS rejected this approach. In assessing the deficiencies in plaintiff's alternative minimum tax payments, the IRS concluded that since section 55 requires that the computation of the alternative minimum income tax base begin with "the taxable income of the taxpayer for the taxable year," and since the wage-expense limitation of section 280C(a) is part of the calculation of that taxable income, the limitation imposed by section 280C(a) must by definition be carried through to the calculation of the alternative minimum income tax base. In other words, the same deductions claimed for the regular income tax base must also be used in the determination of the alternative minimum income tax base. Thus, in the IRS's view, plaintiff was not permitted to restore the deductions foregone in its calculation of regular taxable income despite the fact that the reason for relinquishing those deductions in the first instance—the targeted jobs tax credit—was not applicable in the calculation of the alternative minimum tax.

The problem with the IRS's approach, plaintiff argues, lies in the fact that the regular income tax and the alternative minimum income tax are, in essence, two separate tax systems. In plaintiff's view, since the targeted jobs tax credit is not available under the alternative minimum tax system, neither then should the expense disallowance specified in section 280C(a), which disallows a taxpayer's wage deductions by the amount of the targeted jobs tax credit, have any application in that system. If the purpose of section 280C(a), in other words, is to balance a compensating credit, plaintiff maintains that it is both illogical and unjust to require that an otherwise allowable deduction be reduced when the benefit of the credit itself is not available. Plaintiff's argument, though appealing in its simplicity, is nevertheless wrong.

■ The term "taxable income" as used by Congress in section 55 clearly refers to the taxpayer's taxable income as computed for purposes of the regular income tax. As an initial matter, we note that the Tax Code provides a single definition for the term "taxable income" without reference to or excep-

---

1996, Pub.L. No. 104–188, § 1201, 110 Stat. 1755, 1768 (1996).

4. Section 280C(a) requires a taxpayer claiming a section 51(a) credit to reduce otherwise allowable deductions for wages or salaries by the amount of the credit. The section reads in relevant part as follows:

**Certain expenses for which credits are allowable.**
  (a) **Rule for employment credits.**—No deduction shall be allowed for that portion of the wages or salaries paid or incurred for the taxable year which is equal to the sum of the credits determined for the taxable year under section[] ... 51(a) ....
I.R.C. § 280C(a).

5. Although the Tax Code does not state explicitly that the targeted jobs tax credit is unavailable under the alternative minimum tax regime, that conclusion necessarily follows from the fact that the general business credit provided in section 38 (a component of which is the targeted jobs tax credit) is available only to the extent that a taxpayer's regular income tax liability (reduced by allowable credits) exceeds the taxpayer's alternative minimum tax liability. See I.R.C. § 38(c). In that circumstance (*i.e.*, where the regular tax liability is greater than the alternative minimum tax liability), however, the alternative minimum tax, by definition, does not apply. See I.R.C. § 55(a). Under no situation, then, could a taxpayer be both subject to the alternative minimum tax and eligible for the general business credit.

tion for the alternative minimum tax.[6] In addition, section 55, the section that imposes the alternative minimum tax, specifies:

> If a taxpayer is subject to the regular tax, such taxpayer shall be subject to the tax imposed by this section (and, if the regular tax is determined by reference to an amount other than taxable income, such amount shall be treated as the taxable income of such taxpayer for purposes of the preceding sentence).

I.R.C. § 55(b)(2). The statute's parenthetical text makes sense only if it is otherwise understood that in those situations where the regular tax is in fact determined by reference to taxable income, that income also serves as the basis of the alternative minimum tax.

Nor do any of the sections referenced in section 55(b)(2) enumerating adjustments to "the taxable income of the taxpayer for the taxable year" anticipate a de novo calculation of taxable income. Rather, each of those sections engages, as the baseline for the various adjustments that it specifies, the taxpayer's regular taxable income as that income otherwise would be reported. Section 56, for example, which directs adjustments to certain deductions and allowances applicable to both corporations and individuals, recites that "[i]n determining the amount of the alternative minimum taxable income for any taxable year the following treatment shall apply (in lieu of the treatment applicable for purposes of computing the regular tax)." I.R.C. § 56(a). Thus, section 56 prescribes precisely those adjustments that are to be made to a taxpayer's regular taxable income in order to arrive at a taxpayer's alternative minimum taxable income.

The same is true of sections 57 and 58. Section 57 contains a list of so-called "items of tax preference," meaning certain items accorded special tax treatment (e.g., depletion, intangible drilling costs, and accelerated depreciation on real property) that are to be restored to income for purposes of determining alternative minimum taxable income. And section 58, which deals with losses asso-ciated with tax shelter farm activities and other passive activities, directs that such losses shall not be allowed "[f]or purposes of computing the amount of the alternative minimum taxable income." I.R.C. § 58(a)(1).

Thus, what we encounter in section 55 and the several sections to which it refers is a list of specific adjustments anchored in a taxpayer's regular taxable income that, taken together, establish the content of alternative minimum taxable income. Significantly, none of these sections authorizes the restoration to a taxpayer's alternative minimum taxable income of deductions not claimed as part of the regular taxable income base. Rather, it is the recapture of tax savings through the disallowance of special treatments that is the organizing principle in the construction of alternative minimum taxable income.

In plaintiff's view, however, the fact that the Tax Code contains sections other than those specifically referenced in section 55 that allow for adjustments to the alternative minimum tax base means that non-codified adjustments, such as the reinclusion of credit-displaced deductions, are permissible as well. But the section to which plaintiff refers—section 59—merely specifies the treatment that is to be accorded certain items of income and credit for purposes of defining alternative minimum taxable income and the alternative minimum tax. And as in the preceding sections 56 through 58, section 59 provides explicit directives regarding certain components of regular taxable income that are to be treated differently for purposes of the alternative minimum tax but makes no provision for the adjustment plaintiff seeks.

Taking a step back, then, it becomes evident that Congress has chosen to determine a taxpayer's alternative minimum tax liability by assessing that tax against an income base that excludes certain items initially taken into account in the determination of the taxpayer's regular income tax liability. Because Congress set forth those adjustments with specificity, the court must conclude, absent persuasive evidence to the contrary, that

---

6. Section 63(a) provides:

[F]or purposes of this subtitle, the term "taxable income" means gross income minus the deductions allowed by this chapter (other than the standard deduction).

I.R.C. § 63(a).

Congress intended no other adjustments to apply. *See Tennessee Valley Auth. v. Hill,* 437 U.S. 153, 188, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978) (concluding that where Congress includes certain exceptions in a statute, the maxim *expressio unius est exclusio alterius* presumes that those are the only exceptions Congress intended). The short of the matter, therefore, is that the Tax Code offers plaintiff no basis upon which to restructure its reported regular taxable income for the purpose of calculating its alternative minimum taxable income.[7]

Based on the language and legislative purpose of the alternative minimum tax, we conclude that (1) the basis of alternative minimum taxable income is regular taxable income, (2) adjustments to that income for purposes of computing alternative minimum taxable income are permitted only to the extent that they are congressionally prescribed, and (3) this result is consistent with the fact that the alternative minimum tax was enacted to serve as a safeguard within the regular income tax system, not as a wholly separate system. Accordingly, a taxpayer that seeks to use the targeted jobs tax credit to reduce its regular tax liability must incorporate the section 280C(a) wage-deduction limitation into its computation of taxable income for purposes of both the regular income tax and the alternative minimum tax.

## CONCLUSION

For the reasons set forth above, plaintiff's motion for summary judgment is denied and defendant's cross-motion is granted. The Clerk is directed to enter judgment dismissing the complaint. Each party shall bear its own costs.

---

7. Our conclusion that in the absence of statutory direction to the contrary, the alternative minimum income tax base adopts the same deductions as those claimed in the determination of the regular income tax base, is consistent with the Tax Court's ruling on the same issue in *Allen v. Commissioner,* 118 T.C. 1, 10, 2002 WL 14007 (2002).