VENTAS, INC., (formerly, Hillhaven Corp. and Vendor, Inc.), Plaintiff–Appellant,

v.

UNITED STATES, Defendant–Appellee.

No. 03–5171.

United States Court of Appeals, Federal Circuit.

DECIDED: Aug. 24, 2004.

Michael C. Durney, Law Offices of Michael C. Durney, of Washington, DC, argued for plaintiff-appellant.

Gilbert S. Rothenberg, Attorney, Appellate Section, Tax Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Eileen J. O'Connor, Assistant Attorney General; and Teresa T. Milton, Attorney. Of counsel was Steven W. Parks, Attorney.

Before CLEVENGER, RADER, and SCHALL, Circuit Judge.

SCHALL, Circuit Judge.

Ventas, Inc. ("Ventas") is a real estate company that owns and leases hospitals, nursing centers, and personal care facilities throughout the United States. The Internal Revenue Service ("IRS") determined that it had miscalculated its alternative minimum tax ("AMT") liability and as a result had underpaid its income taxes for tax years 1990, 1991, and 1992. It therefore assessed Ventas additional income taxes for those years. Ventas paid the assessed deficiencies and thereafter filed amended returns seeking a refund. After the IRS denied its claims, Ventas sued in the United States Court of Federal Claims to recover the additional taxes paid, plus statutory interest. On cross-motions for summary judgment, the court ruled in favor of the government and dismissed Ventas' complaint. *Ventas, Inc. v. United States*, 57 Fed.Cl. 411 (2003). Ventas now appeals the court's decision. We affirm.

## BACKGROUND

### I.

The pertinent facts are not in dispute. For the tax years at issue, Ventas was entitled to a "targeted jobs tax credit" against its regular income tax liability under section 51 of the Internal Revenue Code ("IRC" or "Code"). *See* 26 U.S.C.

§ 51(a) (1990).[1] The targeted jobs tax credit was enacted to encourage the hiring of disadvantaged individuals. The credit permits a taxpayer to treat a portion of its payroll costs associated with the employment of such individuals as a credit against its regular income tax.

Section 280C(a) of the IRC is a complement to the provision that allows the targeted jobs tax credit. It provides that "[n]o deduction shall be allowed for that portion of the wages or salaries paid or incurred for the taxable year which is equal to the sum of the credits determined for the taxable year under section[ ] 51(a)...." 26 U.S.C. § 280C(a) (1990). In other words, section 280C(a) provides that the ordinary deduction for wages paid be concomitantly reduced by the amount of the targeted jobs tax credit. When calculating its regular tax liability for the tax years at issue, Ventas availed itself of the targeted jobs tax credit of section 51(a) and complied with the corresponding deduction requirements of section 280C(a).

For the 1990, 1991, and 1992 tax years, Ventas was subject to the AMT provisions of IRC § 55. The purpose of the AMT is to ensure that "no taxpayer with substantial economic income [is] able to avoid all tax liability by using exclusions, deductions and credits." *Ventas*, 57 Fed.Cl. at 412 (citing S.Rep. No. 97–494, at 108 (1982), *reprinted in* 1982 U.S.C.C.A.N. 781, 876 (accompanying the Tax equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, 96 Stat. 324)). According to section 55(a), the AMT is "a tax equal to the excess (if any) of—(1) the tentative minimum tax for the taxable year, over (2) the regular tax for the taxable year." 26 U.S.C. § 55(a) (1990). For corporate taxpayers such as Ventas, the "tentative mini-

mum tax" consists of a tax of 20 percent on the "alternative minimum taxable income" ("AMTI"). *Id.* § 55(b)(1)(B). Thus, AMTI is the tax base from which a corporation's AMT liability is calculated. Under IRC § 55(b)(2), AMTI is defined as "the taxable income of the taxpayer for the taxable year—(A) determined with the adjustments provided in section 56 and section 58 and, (B) increased by the amount of the items of tax preference described in section 57." *Id.* § 55(b)(2). In sum, to calculate one's AMT liability, it is necessary to first determine the AMTI. Using the AMTI as the tax base, the tentative minimum tax is determined. The tentative minimum tax is then compared to the regular tax liability. The AMT liability is the amount by which the tentative minimum tax exceeds the regular tax liability, and is paid in addition to the taxpayer's regular income tax.

It is undisputed that the targeted jobs tax credit of section 51 is not available when calculating AMT liability. *Ventas*, 57 Fed.Cl. at 413 n. 5. For this reason, when computing its AMTI, Ventas did not correspondingly reduce its deduction for wages paid as required by section 280C(a). In other words, for the purpose of calculating its AMTI, Ventas restored the full deduction for wages paid as if it had not availed itself of the targeted jobs tax credit. As a result, its AMTI and corresponding tentative minimum tax were lowered, thereby reducing Ventas' ultimate AMT liability.

In October 1997, Ventas received notice from the IRS of assessed income tax deficiencies for the 1990, 1991, and 1992 tax years in the amounts of $199,471, $677,985, and $723,199, respectively. *Ventas*, 57 Fed.Cl. at 412. The IRS determined that

---

**1.** Section 51(a) has been amended and the "targeted jobs tax credit" is now referred to as the "work opportunity credit." 26 U.S.C. § 51(a) (2000), amended by the Small Business Protection Act of 1996, Pub. L. No. 104–188, § 1201, 110 Stat. 1755, 768 (1996).

Ventas had miscalculated its AMT liability and, as a result, had underpaid its income taxes for those years. Specifically, the IRS asserted that Ventas' failure to reduce the deductions for wages paid, in accordance with section 280C(a), when calculating its AMTI was error. Ventas paid the assessed deficiencies in May 1998, and thereafter filed amended corporate income tax returns seeking a refund for each of the three tax years at issue. After the IRS denied the claims, Ventas timely filed suit in the Court of Federal Claims to recover $1,600,655 in assessed income taxes, $7,462 in assessed penalties, and $1,159,396 in assessed and statutory interest. *Id.*

## II.

In due course, Ventas and the government cross-moved for summary judgment. In its motion, Ventas relied on the legislative history of the AMT provisions to assert that "the regular income tax and the alternative minimum tax are, in essence, two separate tax systems." *Id.* at 413. Thus, according to Ventas, because the targeted jobs tax credit is not available under the AMT system, neither then should the expense disallowance specified in section 280C(a) have any application in that system (specifically, when computing AMTI). Ventas maintained that "[i]f the purpose of section 280C(a), in other words, is to balance a compensating credit ... it is both illogical and unjust to require that an otherwise allowable deduction be reduced when the benefit of the credit itself is not available." *Id.*

For its part, the government argued that because IRC § 55 "requires that the computation of the alternative minimum income tax base begin with 'the taxable income of the taxpayer for the taxable year,' and since the wage-expense limitation of section 280C(a) is part of the calculation of that taxable income, the limitation imposed by section 280C(a) must by definition be carried through to the calculation of the alternative minimum tax base." *Id.* Put differently, the government contended that the same deductions claimed for the regular income tax base must also be used in calculating the AMTI. Thus, the government urged that Ventas "was not permitted to restore the deductions foregone in its calculation of regular taxable income despite the fact that the reason for relinquishing those deductions in the first instance—the targeted jobs tax credit—was not applicable in the calculation of the alternative minimum tax." *Id.*

The Court of Federal Claims agreed with the government. It determined that nothing in the AMT provisions "authorizes the restoration to a taxpayer's alternative minimum taxable income of deductions not claimed as part of the regular taxable income base. Rather, it is the recapture of tax savings through the disallowance of special treatments that is the organizing principle in the construction of alternative minimum taxable income." *Id.* at 414. The court thus concluded that "a taxpayer that seeks to use the targeted jobs tax credit to reduce its regular tax liability must incorporate the section 280C(a) wage-deduction limitation into its computation of taxable income for the purpose of both the regular income tax and the alternative minimum tax." *Id.* at 415.

Accordingly, the Court of Federal Claims granted the government's summary judgment motion and ruled that Ventas was not entitled to its claimed refund. Ventas timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## ANALYSIS

### I.

The facts of the case are not in dispute. Rather, Ventas challenges the

Court of Federal Claims' interpretation of certain provisions of the Internal Revenue Code. Specifically, the case centers on the proper method for calculating AMTI, which is the tax base for determining AMT liability. We review questions of statutory interpretation without deference. *Am. Mut. Life Ins. v. United States,* 267 F.3d 1344, 1349 (Fed.Cir.2001).

## II.

Statutory interpretation necessarily begins with the text of the statute. *Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 438, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999). Under the statute, the starting point for determining AMTI is "taxable income." 26 U.S.C. § 55(b)(2). Section 55 specifies:

> The term "alternative minimum taxable income" means the taxable income of the taxpayer for the taxable year—
>
> (A) determined with the adjustments provided in section 56 and section 58, and
>
> (B) increased by the amount of the items of tax preference described in section 57.
>
> If a taxpayer is subject to the regular tax, such taxpayer shall be subject to the tax imposed by this section (and, if the regular tax is determined by reference to an amount other than taxable income, such amount shall be treated as the taxable income of such taxpayer for purposes of the preceding sentence).

*Id.* § 55(b)(2). As the Court of Federal Claims noted, "[t]he statute's parenthetical text makes sense only if it is otherwise understood that in those situations where the regular tax is in fact determined by reference to taxable income, that income also serves as the basis of the alternative minimum tax." *Ventas,* 57 Fed.Cl. at 414.

For purposes of the Code, the term "taxable income" means "gross income mi-nus the deductions allowed by this chapter." 26 U.S.C. § 63(a). According to section 55(b)(2), the "taxable income" for the AMTI is determined taking into account IRC §§ 56, 57, and 58. *Id.*

Section 56 directs adjustments to certain deductions and allowances and recites that "[i]n determining the amount of the alternative minimum taxable income for any taxable year the following treatment shall apply (in lieu of the treatment applicable for purposes of computing the regular tax)." 26 U.S.C. § 56(a) (1990). As the Court of Federal Claims observed, "section 56 prescribes precisely those adjustments that are to be made to a taxpayer's regular taxable income in order to arrive at a taxpayer's alternative minimum taxable income." *Ventas,* 57 Fed. Cl. at 414. Sections 57 and 58 deal, respectively, with "items of tax preference" and "denial of certain losses" that are explicitly applicable in computing AMTI. 26 U.S.C. §§ 57, 58 (1990). Taken together, sections 55 through 58 establish that the content of the AMTI is anchored in a taxpayer's regular taxable income. Significantly, as the Court of Federal Claims noted, "none of these sections authorized the restoration to a taxpayer's alternative minimum taxable income of deductions not claimed as part of the regular taxable income base." *Ventas,* 57 Fed. Cl. at 414.

Finally, IRC § 59, while not specifically mentioned in section 55, delineates "other definitions and special rules" that apply in arriving at the AMT. Specifically, "[t]he limitations of sections 704(d), 465 and 1366(d) (and such other provisions as may be specified in regulations) shall be applied for purposes of computing the [AMTI] of the taxpayer for the taxable year with the adjustments of sections 56, 57, and 58." 26 U.S.C. § 59(h) (1990). IRC §§ 704(d), 465 and 1366(d) limit the losses certain taxpayers, such as shareholders or family

partnerships, may claim in various situations. *See id.* §§ 1366(d), 704(d). Thus, as far as calculating the AMTI, section 59(h) requires that certain loss limitations be recomputed so as to take into account the adjustments dictated by sections 56, 57, and 59.

■ Taking the AMT provisions of sections 55–59 together, as the Court of Federal Claims did, "it becomes evident that Congress has chosen to determine a taxpayer's [AMT] liability by assessing that tax against an income base that excluded certain items initially taken into account in the determination of the taxpayer's regular income tax liability." *Ventas,* 57 Fed.Cl. at 414. Where Congress includes certain exceptions in a statute, the maxim *expressio unius est exclusio alterius* presumes that those are the only exceptions Congress intended. *Tenn. Valley Auth. v. Hill,* 437 U.S. 153, 188, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978). Accordingly, we agree with the Court of Federal Claims' conclusion that "[b]ecause Congress set forth those adjustments with specificity, the court must conclude, absent persuasive evidence to the contrary, that Congress intended no other adjustments to apply." *Ventas,* 57 Fed.Cl. at 414–15.

We now turn to the language of the targeted jobs tax credit, set forth in section 51 of the Code. This tax credit is part of the general business credit permitted under IRC § 38, *see* 26 U.S.C. § 38(b)(2), and allows an employer who hires members of certain disadvantaged groups to receive a credit against its regular income tax liability, *see* 26 U.S.C. § 51(d). It is undisputed that the targeted jobs tax credit is not available when computing AMT liability pursuant to section 51(a). *Ventas,* 57 Fed.Cl. at 413; *see* 26 U.S.C. § 38(c)(1).

Section 280C(a) is a complement to section 51(a). It disallows a portion of a taxpayer's wage deduction if a jobs credit was determined for the taxpayer. This prevents a taxpayer from enjoying the windfall of claiming both a deduction and a credit with respect to the same item of expense. Section 280C(a) unambiguously dictates that "[n]o deduction shall be allowed for that portion of the wages or salaries paid or incurred for the taxable year which is equal to the sum of the credits determined for the taxable year under sections 45A(a), 51(a), and 1396(a)." 26 U.S.C. § 280C(a) (emphasis added). There is no qualification to this rule. Section 280C(a) is not referenced in the AMT provisions of sections 55–58, nor is there any reference to section 280C(a) in section 59(h). It appears clear, then, that the disallowance of the wage deduction for regular taxable income remains applicable as long as the taxpayer avails itself of the targeted jobs tax credit, regardless of whether the taxpayer falls under the AMT provisions of sections 55.

Having examined the language of the relevant statutory provisions, we find no basis in the Code to support Ventas' position that it was permitted to restore the full deduction for wages paid in calculating AMTI where it chose to avail itself of the targeted jobs tax credit when computing its regular tax liability.

### III.

■ We have stated that "[t]he ultimate goal in construing a statute is to give effect to the intent of Congress." *See In re Portola Packaging, Inc.,* 110 F.3d 786, 788 (Fed.Cir.1997). "In fulfilling that duty, 'we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy.'" *Id.* (quoting *Crandon v. United States,* 494 U.S. 152, 158, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990)). Ventas argues that Congress intended the AMT to be a "separate and independent tax system"

and that "Congress intended a basic logic to be applied to the two tax systems." This basic logic, it contends, would allow restoration of the full deduction for wages paid in computing its AMTI.

The Tax Court, in *Allen v. Commissioner*, 118 T.C. 1, 2002 WL 14007 (2002), addressed this very argument—namely, whether Congress intended that the AMT be a "separate but parallel" tax system, thereby inviting a *de novo* calculation of the regular tax liability as a precursor to determining AMTI. In *Allen,* the Tax Court concluded that section 280C(a) enters into the calculation of a taxpayer's AMTI where the taxpayer availed itself of the targeted jobs tax credit of section 51(a). 118 T.C. at 10–11. In reaching that conclusion, it addressed at length the pertinent legislative history of the AMT.

The AMT was enacted in the Tax Reform Act of 1986, Pub. L. No. 99–514, 100 Stat. 2085 ("1986 Act"). In *Allen,* the court cited several places in the 1986 legislative history where Congress referred to the "separate but parallel" relationship of the regular tax system to the AMT system. 118 T.C. at 12–14. Specifically, the court noted that the "separate but parallel" language does not appear in the explanation section of any of the committee reports underlying the enactment of the 1986 Act. Instead, the court pointed out, it appears twice in the "present law" sections of the conference report where the conferees used the phrase to explain the pre–1986 treatment of the carryover of AMT net operating losses ("NOLs") and AMT foreign tax credits ("FTCs"). *Id.* at 12–13. The court also pointed out that the "separate but parallel" language was used by the conferees in describing the effect of the House bill on the application of AMT FTCs and NOLs to corporate taxpayers. *Id.*

The Tax Court also considered language from the Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1986 (J. Comm. Print 1987) ("General Explanation of the 1986 Act"). There, the Joint Committee of Taxation for the 100th Congress ("Joint Committee")—i.e., the Congress that next followed the Congress that passed the 1986 Act—remarked that *"[f]or most purposes,* the tax base for the new alternative minimum tax is determined *as though* the alternative minimum tax were a separate and independent income tax system." General Explanation of the 1986 Act. (cited at *Allen,* 118 T.C. at 15 (emphases added)). However, the Tax Court noted that this explanation by the Joint Committee is not part of the "legislative history" of the 1986 Act. *Allen,* 118 T.C. at 15. Even if this language carried the weight of legislative history, the Tax Court noted, "the phrase 'For most purposes' means that even the Joint Committee recognized that the regular tax and AMT systems were not parallel systems for all purposes. The same is true as to the use of the term 'as though,' rather than a term such as 'by virtue of the fact that.' " *Id.* According to the Tax Court, this statement by the Joint Committee in the succeeding Congress thus contradicted any assertion that the AMT and regular tax are, in fact, wholly separate and independent income tax systems.

In sum, the relevant statutory provisions provide Ventas no basis upon which to restructure its reported regular taxable income for the purpose of calculating its AMT liability. Furthermore, the relevant legislative history does not show clear Congressional intent to deviate from the plain and unambiguous language of the statute.

CONCLUSION

For the foregoing reasons, we conclude that Ventas is not entitled to a refund of

the additional taxes it was required to pay as a result of having miscalculated its AMT liability. Accordingly, we affirm the judgment of the Court of Federal Claims.

*AFFIRMED.*