John W. **BULL**, et al., Plaintiffs,

v.

The **UNITED STATES**, Defendant.

No. 01–56 C.

United States Court of Federal Claims.

Feb. 1, 2005.

David L. Kern, El Paso, TX, for plaintiffs. Mark L. Greenwald, San Antonio, TX, of counsel.

Christian J. Moran, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Mark A. Mel-

nick, Assistant Director, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, for defendant. Robert Humphries and Christopher J. Duncan, Department of Homeland Security, United States Customs and Border Protection, El Paso, TX, of counsel.

### OPINION AND ORDER

HEWITT, Judge.

Before the court is Defendant's Motion for Judgment Upon the Pleadings (Def.'s Mot.), Appendix in Support of Defendant's Motion for Judgment Upon the Pleadings (Def.'s App.), and the responsive briefing thereto.[1] Also before the court is the Memorandum of the National Treasury Employees Union as Amicus Curiae in Support of the Plaintiffs (NTEU Brief); the appendix thereto (NTEU App.); Defendant's Response to Brief, Filed by National Treasury Employees Union as *Amicus Curiae*, Regarding Defendant's Motion for Judgment Upon the Pleadings (Def.'s NTEU Resp.), and Reply of Amicus Curiae National Treasury Employees Union to the Defendant's Response (NTEU Reply). For the following reasons, defendant's motion is DENIED.

## I. Introduction

Plaintiffs' complaint seeks unpaid overtime compensation and wages under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219 (2000), for approximately sixty canine enforcement officers (CEOs) now employed by the United States Department of Homeland Security, Customs and Border Protection (CBP). Plaintiffs' Second Amended Complaint (Compl. or complaint) at ¶¶ II–VI. Plaintiffs specifically allege in their six-count complaint that defendant failed to pay for: (1) "time worked ... transport[ing] and

laundering ... training towels during off duty time;" (2) "time worked ... caring for and training drug sniffing dogs during off duty time;" (3) "time worked ... transport[ing], buying and/or acquiring ... the necessary building materials and time spent building the necessary training aids required to be used for training drug sniffing dogs during off duty time;" (4) "time worked ... cleaning and maint[aining] ... weapons and in weapons training during off duty time;" (5) "time worked ... while engaged in training in the Academy;" and (6) "time worked ... without compensation while 'off-the-clock.'" Compl. ¶ XI. Defendant seeks to dismiss plaintiffs' claims on the ground that the Customs Officer Pay Reform Act (COPRA or the Act), 19 U.S.C. §§ 261, 267 (2000), enacted in 1993,[2] is the exclusive pay system for CEOs, excluding them from coverage under FLSA.[3] Def.'s Mot. at 1. Defendant's motion is made under Rule 12(c) of the Rules of the United States Court of Federal Claims (RCFC), and could, if granted, result in the dismissal of plaintiffs' claim with prejudice because plaintiffs are not necessarily permitted to amend their complaint. *See* RCFC 12(c) (permitting the filing of such motion "[a]fter the pleadings are closed").

The question before the court is the interpretation of COPRA and the implementing regulations of the Department of the Treasury, the Office of Personnel Management, and the Department of Homeland Security.

## II. Discussion

### A. Standard of Review

Rule 12(c) permits a party to seek judgment based on a complainant's pleadings. RCFC 12(c). The rule states:

> After the pleadings are closed, but within such time as not to delay the trial, any

---

1. The responsive briefing includes: (1) Plaintiffs' Response to Defendant's Motion for Judgment Upon the Pleadings (Pls.' Resp.) and (2) Defendant's Reply to Plaintiffs' Response to Defendant's Motion for Judgment Upon the Pleadings (Def.'s Reply).

2. COPRA was enacted by the Omnibus Budget Reconciliation Act of 1993, Pub.L. No. 103–66, §§ 13811–13813, 107 Stat. 312, 668 (Aug. 10, 1993).

3. This case was transferred from the United States District Court for the Western District of Texas on January 26, 2001. *See* Transfer Notice of 1/26/01 issued by the Clerk of the Court of Federal Claims. Plaintiffs filed their second amended complaint on August 8, 2001. *See* Compl. at 1. Defendant's motion was filed on August 3, 2004 and fully briefed on January 7, 2005. Trial is scheduled to begin on May 3, 2005.

party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

*Id.*

When considering a motion for judgment on the pleadings, the court assumes that all of the nonmovant's factual allegations are true and that all reasonable inferences favor the nonmoving party. *See Atlas Corp. v. United States,* 895 F.2d 745, 749 (Fed.Cir. 1990) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Owen v. United States,* 851 F.2d 1404, 1407 (Fed.Cir.1988)). The court does not accept, however, "assertions in the pleadings that amount to legal conclusions." *J.M. Huber Corp. v. United States,* 27 Fed.Cl. 659, 661 (1993). Where " 'it appears to a certainty that [the nonmoving party] is entitled to no relief under any state of facts which could be proved in support of his claim,' " *Branning v. United States,* 215 Ct.Cl. 949, 949, 1977 WL 9606 (1977) (citations omitted), and the moving party is entitled to judgment as a matter of law, entry of judgment on the pleadings is proper.

Here, because defendant's appendix contains material outside of the pleadings, the court considers defendant's motion under the summary judgment standard of RCFC 56. Rule 56 provides that summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Jay v. Sec'y of Dep't of Health and Human Servs.,* 998 F.2d 979, 982 (Fed.Cir.1993). A fact is material if it might significantly affect the outcome of the suit under governing law. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Disputes over facts that are not outcome determinative will not preclude the entry of summary judgment. *Id.* Any doubts about factual issues are resolved in favor of the party opposing summary judgment, *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.,* 755 F.2d 158, 163 (Fed.Cir.1985), to whom the benefits of all favorable inferences and presumptions run. *See H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir. 1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

## B. Whether COPRA is the Exclusive Pay System for CEOs

### 1. Enactment of COPRA and Overview of Defendant's Argument

■ COPRA was enacted in 1993 to supplant a special compensation statute enacted in 1911, 66 Pub.L. No. 131, 66 Cong. Ch. 61, 41 Stat. 402 (February 13, 1911) (the 1911 Act). Def.'s Mot. at 6 & n.2. The 1911 Act provided extra pay to a broadly inclusive group of customs "officers and employees." *Id.* at 6 (citation omitted). The extra pay provisions of the 1911 Act were generous, affording " 'one-half day's additional pay for each two hours or fraction thereof ... and two additional days' pay for Sunday or holiday duty.' " *Id.* at 7 (quoting 19 U.S.C. § 267). These provisions were supplanted by COPRA. *Id.*

COPRA states:

Subject to paragraph (2) and subsection (c) of this section, a customs officer who is *officially assigned* to perform work in excess of 40 hours in the administrative workweek of the officer or in excess of 8 hours in a day shall be *compensated for that work* at an hourly rate of pay that is equal to 2 times the hourly rate of the basic pay of the officer.

19 U.S.C. § 267(a)(1) (emphasis added). Eligibility for COPRA pay is limited to "customs officer[s]" who are defined in section 267(e)(1) to include "canine enforcement officer[s]," such as plaintiffs here.

The language on which defendant relies appears in section 267(c), which addresses the "[e]xclusivity of pay." Section 267(c)(2) of COPRA provides:

A customs officer who receives overtime ... or premium pay under [COPRA] for time worked *may not receive pay or other*

*compensation for that work* under any other provision of law.

19 U.S.C. § 267(c)(2) (emphasis added).

Defendant argues that COPRA is the exclusive compensation system for CEOs based on "the text of the statute, the interpretation offered by relevant agencies, and the relevant legislative[ ] and regulatory history." Def.'s Mot. at 5. In particular, defendant argues that COPRA preempts the operation of FLSA so that CEOs are not entitled to receive compensation under FLSA for work for which the CEOs are not compensated under COPRA. Defendant also argues that a 2003 arbitration decision supports its position. *Id.*

### 2. The Text of the Statute

The starting point for statutory interpretation is the language of the statute. *Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 438, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999) (stating that analysis "in any case of statutory construction ... begins with 'the language of the statute'"); *Ventas, Inc. v. United States,* 381 F.3d 1156, 1160 (Fed.Cir.2004) ("Statutory interpretation *necessarily begins with the text of the statute.*"). Although defendant asserts that the "text of the statute" supports its conclusion, Def.'s Mot. at 5, this does not appear to the court to be correct. In its argument on statutory language, defendant describes COPRA's alleged prohibition on other compensation as follows:

> COPRA states that "customs officers," which include canine enforcement officers, that receive pay pursuant to COPRA "may not receive pay or other compensation *for that work* under any other provision of law."

Def.'s Mot. at 11 (quoting 19 U.S.C. §§ 267(c)(2), (e)) (emphasis added).

Without addressing the import of the phrase "for that work," defendant argues that COPRA clearly "[r]estrict[s] the [p]ayment of [e]xtra [c]ompensation" to customs officers. *Id.* at 7. Defendant contends that "Congress created an entirely new overtime system," Def.'s Reply at 5, because "COPRA does not limit what officially assigned duties the customs officers must be performing to receive compensation," *id.* at 4–5. Defen-

dant states that "Congress excluded customs officers from receiving overtime compensation pursuant to the FLSA when it enacted COPRA." Def.'s Reply at 12 n.4; *see also id.* at 13.

In response, plaintiffs argue that COPRA "modified" the 1911 Act's overtime compensation system by limiting " 'who' is eligible for inspectional overtime ... to a very narrow definition of customs employees" performing "officially assigned" tasks. Pls.' Resp. at 8. Pointing to the text of the exclusivity provision of COPRA, plaintiffs assert that a customs officer who receives overtime pay under COPRA for time worked may not receive other compensation "for that work." *Id.* at 9. Plaintiffs contend that "what COPRA excludes is not FLSA pay, but ... the payment of FLSA overtime for specific work that is covered by COPRA and that has been paid for under COPRA." *Id.*

When section 267(a) is construed with section 267(c) of the statute, the court finds that COPRA authorizes overtime compensation to customs employees performing "officially assigned" work, 19 U.S.C. § 267(a)(1), and prohibits customs officers who have received overtime pay under COPRA from receiving any additional pay "for that work," 19 U.S.C. 267(c)(2). It is the view of the court that the language in the "exclusivity" provision of the statute is not as broad as defendant asserts. The interpretation urged by defendant, that COPRA precludes customs officers from receiving overtime "pay or other compensation ... under any other provision of law," *see* Def.'s Mot. at 5, 7, does not address the import of the phrase *"for that work"* in the statute. In the context of the statute as a whole, that phrase should, the court believes, be read to qualify the type of work for which a customs officer is eligible to receive overtime compensation under COPRA rather than to limit a custom officer's eligibility for overtime pay in all circumstances to the provisions of COPRA. The statutory language appears to the court to leave open the possibility of compensation under some other pay regime for work not "officially assigned" and therefore not compensable under COPRA. The court believes this latter interpretation both gives meaning to all portions of the

statute as required by the rules of statutory construction, *see Meeks v. West,* 216 F.3d 1363, 1367 (Fed.Cir.2000) (stating that "[a] statute is to be construed in a way which gives meaning and effect to all of its parts"), and is consistent with the terms of both COPRA and FLSA.

### 3. Legislative History

In support of its view that COPRA is the exclusive system for overtime pay for CEOs, *see* Def.'s Mot. at 12, defendant relies on the following statement in a House of Representatives Report:

> The Committee intends that Customs officials will be compensated for actual time worked at only one of the following rates *for any given tour of duty:* (1) basic pay rates as prescribed in Title 5 of the United States Code; (2) premium pay rates as described in this bill; or (3) overtime rates as prescribed in this bill. The Committee does not intend that these rates be additive.

*Id.* (quoting H.R.Rep. No. 103–111, at 574 (1993), *reprinted in* 1993 U.S.C.C.A.N. 378, 806) (emphasis added). Defendant contends that this passage "indicates that Congress authorized compensation to customs officers pursuant to only three titles in the United States Code, none of which included the FLSA." Def.'s NTEU Resp. at 8. Defendant asserts that this committee report "is highly persuasive about the intent of Congress." *Id.*

Plaintiffs argue that the government "is interpreting a statute ... clear on its face." Pls.' Resp. at 11–12. Plaintiffs' argument implies that an examination of the legislative history is unnecessary because the language of the statute is unambiguous.

In *Ventas, Inc. v. United States,* the Federal Circuit stated that "in construing a statute ... to give effect to the intent of Congress, ... [a court may] look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." 381 F.3d at 1161 (internal quotations omitted). The legislative history of a statute may assist the court in ascertaining the "design" of a statute and its "object and policy." *See id.* at 1162.

In this case, the court does not find that the language of the quoted 1993 House Report, H.R.Rep. No. 103–111, requires the interpretation defendant suggests. The phrase "tour of duty," for example, could be viewed as limited to regularly scheduled work, such as inspections, rather than work "suffer[ed] or permit[ted]" to be performed, *see* 29 U.S.C. § 203(g),[4] which is the subject of plaintiffs' claims. The court's view is reinforced by the plain language of COPRA, which limits its applicability to "that work" which an employee is "officially assigned" to perform. 19 U.S.C. § 267(a)(1).

Notwithstanding plaintiffs' contention that the court need not look to the legislative history of COPRA for interpretative guidance, plaintiffs point to a subsequent interpretative comment contained in a 2001 House Committee Report recommending a modification of COPRA. Pls.' Resp. at 12. Plaintiffs point to language in the Committee Report that appears to assume that CO-PRA's applicability is limited and non-exclusive. *Id.* Addressing the pay provisions of COPRA, the report stated that "only inspectors and canine officers are covered by the reforms and *only when performing inspections.*" *Id.* (quoting H.R.Rep. No. 107–320, at § 4 (2001)). Although this comment is consistent with the court's view of the plain meaning of the text of COPRA, the court notes that it follows by eight years the enactment of COPRA and does not provide evidence of the intent of Congress in the 1993 enactment of COPRA.

As additional support for its position, defendant also points to legislative history indicating that COPRA was modeled upon the Federal Employees Pay Act (FEPA) of 1945, Pub.L. No. 79–106, 59 Stat. 295 (June 30, 1945) (initially codified at 5 U.S.C. § 911; re-

---

**4.** As defined in FLSA, the term "employ" includes "to suffer or permit to work." 29 U.S.C. § 203(g). FLSA prohibits an employer from "employ[ing] any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

codified as amended at 5 U.S.C. § 5542). Def.'s NTEU Resp. at 9–11. Defendant specifically points to House Resolution 22, introduced on January 5, 1993 by Representative J.J. Pickle, Chairman of the Subcommittee on Oversight, following his review of a June 14, 1991 report by the General Accounting Office encouraging Customs "[m]anagement [to] [f]ocus on [m]ore [e]fficient [u]se of [o]vertime." *Id.* at 9–10; NTEU App. at 226. Representative Pickle reported that the "1911 Act overtime pay ha[d] been abused and mismanaged, and need[ed] to be addressed through legislative and administrative change," *see* NTEU App. at 177, and the Subcommittee on Oversight recommended "that the 1911 Act be modified to mirror the [FEPA] rules," *id.* at 188. House Resolution 22 became part of House Resolution 2264, the Omnibus Budget Reconciliation Act of 1993, of which COPRA is a part.[5] Def.'s NTEU Resp. at 10; *see also* Def.'s Mot. at 7 n.3. Defendant asserts that COPRA is modeled on FEPA and that eligibility for overtime under FEPA is different from eligibility for overtime under FLSA. Def.'s NTEU Resp. at 12. Compensable overtime under FEPA is limited to "officially ordered or approved" work, 5 U.S.C. § 5542(a) (2000) while FLSA mandates compensation of employees for hours worked, including, within the definition of work, activities that employers suffer or permit. 29 U.S.C. § 203(g); *see also Doe v. United States,* 372 F.3d 1347, 1360 (Fed.Cir.2004) (comparing the different standards for overtime compensation between FEPA and FLSA).

The 1991 GAO report cited by defendant, *see* Def.'s NTEU Resp. at 9, identified the inattention of management "to individual *overtime assignments*" as the source of Customs' "vulnerability to fraud and abuse" in the use of overtime. NTEU App. at 225 (emphasis added) (GAO Report addressed to Hon. Sam M. Gibbons, Chairman of the Subcommittee on Trade and Hon. J.J. Pickle, Chairman of the Subcommittee on Oversight dated 6/14/91). The GAO report, however, did not address the type of "suffer[ed] or permit[ted]" overtime work, *see* 29 U.S.C.

§ 203(g), about which plaintiffs complain here.

Moreover, the suggestion by defendant that COPRA was based on FEPA, another federal statute limiting eligibility for overtime compensation to employees performing certain officially approved work, does not persuade the court that COPRA is, or is intended to be, the exclusive compensation system for customs officers in all circumstances.

Notwithstanding the recommendation of the Subcommittee on Oversight that "the 1911 Act be modified to mirror the [FEPA] rules," NTEU App. at 188, the statutory provisions of COPRA do not mirror FEPA. In particular, the relevant exclusivity provision in FEPA is worded quite differently from any part of COPRA:

> For full-time, part-time and intermittent tours of duty, hours of *work officially ordered or approved* in excess of 40 hours in an administrative workweek, or … in excess of 8 hours in a day, performed by an employee are overtime work and shall be paid for … at [the rates provided in 5 U.S.C. § 5542(a)(1)-(5) ].

5 U.S.C. § 5542(a) (emphasis added).

Furthermore, FEPA expressly delegated rulemaking authority to the cognizant agency (originally the Civil Service Commission, now OPM). *See* 5 U.S.C. § 5548(a) (2000); *Doe,* 372 F.3d at 1352. The rule adopted under this rulemaking authority expressly limited overtime to work "approved only in writing by an officer or employee to whom this authority has been specifically delegated." 5 C.F.R. § 550.111(c) (2003). There is no similar delegation of rule-making authority in COPRA.

It is the view of the court that the limitations in the statutory language of COPRA itself reflect the limited applicability of COPRA for the payment of overtime compensation and that the legislative history does not support an interpretation which would deviate from the plain meaning of the statutory language.

---

**5.** *See supra* n. 2.

### 4. Agency Interpretations of COPRA

█ Defendant argues that relevant agency interpretations of COPRA support its view that COPRA is the exclusive pay system for CEOs. *See* Def.'s Mot. at 8–10, 12–14; Def.'s Reply at 9–12.

Defendant points to the interim Customs regulations issued in 1993 by the Department of Treasury (Treasury) to implement CO-PRA. *See* Def.'s Mot. at 8; Def.'s Reply at 10. The interim Customs regulations, set forth in 19 C.F.R. Sections 4, 24, 122–123, and 134, described COPRA as " 'a new and exclusive compensation arrangement for Customs Officers who perform inspectional overtime services.' " [6] Def.'s Mot. at 8 (quoting Department of the Treasury, Customs Service, Pay Reform for Customs Inspectional Services, Interim Regulations and Solicitation of Comments, 58 Fed.Reg. 68520, 68522 (Dec. 28, 1993)) (interim Customs regulations implementing pay reform for Customs inspectional services). Defendant states that, in response to the interim Customs regulations, an unnamed labor organization (presumed by defendant to be the National Treasury Employees Union (NTEU)) [7] submitted a comment asserting that COPRA and its implementing regulations, particularly the "exclusivity" provision, contained in 19 C.F.R. § 24.16(a) (2004),[8] "did not divest covered employees of their right to receive payment under other applicable pay statutes, such as FLSA, for work performed." *Id.* at 9. Defendant points out that, in the final rule, Customs specifically addressed that public comment, *see* Def.'s Mot. at 9, and replied that COPRA "created a total pay and compensation system unique to the inspectional duties performed by Customs Officers ... [and] effectively removed those officers from coverage under any other statute for pay and compensation purposes," Pay Reform for Customs Inspectional Services, 59 Fed.Reg. 46,752, 46,753 (Sept. 12, 1994); *see also* Def.'s Reply at 10. Defendant contends that "the[ ] statements by Treasury are entitled to deference because they were issued contemporaneously with the statute." Def.'s Reply at 10 (citing *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965) ("When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration.")). However, the statements by Treasury in the interim rules and in response to comments do not, as defendant claims, require the interpretation defendant urges. The work for which plaintiffs claim compensation here consists of training and other support activities-none of which includes "inspectional overtime services."

Defendant also points to the proposed regulation issued in 1997 by the Office of Personnel Management (OPM). *Id.* at 9. OPM proposed to add a new regulation, 5 C.F.R. § 551.211, that "describes the statutory exclusion of customs officers of the United States Customs Service [and states that] [c]ustoms officers whose exclusive entitlement to overtime pay is governed by ... (sections 261 and 267 of title 19, United States Code [COPRA]), are excluded from the hours of work and overtime pay provisions of the FLSA." *Id.* (quoting Pay Administration Under the Fair Labor Standards Act, 62 Fed.Reg. 45,064, 45,064 (Aug. 25, 1997)). Defendant points out that, during the comment period on the proposed regulations, NTEU stated that the proposed regu-

---

**6.** At the time that Treasury issued these interim regulations, the United States Customs Service was a part of the Treasury Department. *See* Def.'s Mot. at 8.

**7.** Defendant asserts that NTEU is "the exclusive labor representative of all non-supervisory CEOs." Def.'s Mot. at 9 n.4. NTEU states that:

> [It] is the exclusive bargaining representative of approximately 14,600 employees of the Bureau of Customs and Border Protection (CBP) who were formerly employed by the U.S. Customs Service, including former Customs ca-

nine enforcement officers (CEOs). NTEU has represented these "legacy" Customs employees for nearly 30 years.
NTEU Brief at 2–3.

**8.** That provision states, in pertinent part:

> Customs Officers entitled to overtime compensation and premium pay, pursuant to the provisions of the Customs Officer Pay Reform legislation (19 U.S.C. 261 and 267, as amended), shall not receive pay or other compensation *for that work* under any other provision of law.

19 C.F.R. § 24.16(a) (2004) (emphasis added).

lation goes beyond COPRA because it " 'completely *excludes* customs officers from the overtime pay and hours or work provisions of the FLSA.' " *Id.* at 10 (quoting Pay Administration Under the Fair Labor Standards Act, 62 Fed.Reg. 67,238, 67,242 (Dec. 23, 1997)). As finally adopted, OPM's "statutory exclusion" regulation dropped the reference to the inapplicability of FLSA and used language that is substantially similar to the exclusivity provision of COPRA, including the "for that work" limitation to the exclusivity of COPRA: [9]

> A customs officer who receives overtime pay under subsection (a) or premium pay under subsection (b) of section 267 of title 19, United States Code, for time worked may not receive pay or other compensation *for that work* under any other provision of law. As used in section 5, the term "customs officer" means a United States Customs Service supervisory or nonsupervisory customs inspector or a supervisory or nonsupervisory canine enforcement officer.

5 C.F.R. § 551.211 (2003) (emphasis added); *see also* Pay Administration Under the Fair Labor Standards Act, 62 Fed.Reg. at 67,242. Defendant contends that there is no evidence that OPM "change[d] its position" with respect to the FLSA exclusion. Def.'s Reply at 12.

While the "Summary" portion of OPM's 1997 regulations states that the regulations "amend[ ] ... pay administration under [FLSA]" and, among other additions, "add[ ] the statutory exclusion of customs officers," Pay Administration Under the Fair Labor Standards Act, 62 Fed.Reg. at 67,238 (Dec. 23, 1997), contrary to defendant's assertions, OPM regulation 5 C.F.R. § 551.211, which addresses the statutory exclusion under COPRA, does not create an express exemption from FLSA. The same "Summary" portion of the regulations stating that the 1997 OPM regulations added the "statutory exclusion" under COPRA also added "certain work in the computer software field to the professional exemption criteria" and added "an exemption for certain pilots." Pay Administration Under the Fair Labor Standards Act, 62 Fed.Reg. at 67,238. It appears to the court that OPM itself made a distinction between the addition of an exclusion under COPRA and the addition of FLSA exemption criteria. Because the final 1997 OPM regulation closely tracks the language of COPRA and prohibits a *customs officer who has received* overtime pay under COPRA "for time worked ... [from] receiv[ing] pay or other compensation *for that work* under any other provision of the law," 5 C.F.R. § 551.211 (emphasis added), the court does not find, in the absence of explicit regulatory language, that the OPM regulation created a FLSA exemption that COPRA did not itself create. The text of the OPM regulation reflects the same limited applicability, *see* Part B.2, *supra,* that COPRA does.

Defendant also argues that the regulations issued by the Department of Homeland Security (DHS) in June 2004 "reinforce the conclusion that COPRA is the only statute authorizing the payment of overtime for trained canine enforcement officers." Def.'s Mot. at 13. The DHS regulations amend the definition of "customs officer" and "make COPRA ... the overtime and premium pay system" for all inspection personnel working at the nation's border.[10] Overtime Compensation and Premium Pay for Customs Officers, 69 Fed.Reg. 35,229, 35,230 (June 24, 2004) (DHS Final Rule). Defendant argues that, by amending the definition of "customs officer," [11] the DHS regulations effectively "im-

---

**9.** This regulation became effective on December 23, 1997. *See* Pay Administration Under the Fair Labor Standards Act, 62 Fed.Reg. at 67,242.

**10.** Consistent with the government reorganization effected by the Homeland Security Act of 2002, Pub.L. No. 107–296, 116 Stat. 2135 (Nov. 25, 2002), the United States Customs and Border Protection, including all personnel from different agencies (Agriculture, Immigration and Naturalization Service, and Customs) performing inspection work at the nation's ports of entry, is now part of the Department of Homeland Security. *See* Overtime Compensation and Premium Pay for Customs Officers, 69 Fed.Reg. 35,229, 35,230 (June 24, 2004); *see also* Def.'s Mot. at 13.

**11.** The DHS regulations amend the definition of "customs officer" set forth in 19 C.F.R § 24.16(b)(7) and make a conforming change to the definition of an "immigration officer" set forth in 8 C.F.R. § 103.1(b) (2004). Overtime Compensation and Premium Pay for Customs Officers, 69 Fed.Reg. at 35,234.

plement[ed] a single overtime and premium pay system" to replace three different agency systems. Def.'s NTEU Resp. at 16–17 (quoting Overtime Compensation and Premium Pay for Customs Officers, 69 Fed.Reg. 18,296, 18,297 (Apr. 7, 2004)).

The court is not persuaded that the ·COPRA-related regulations issued by DHS explicitly exclude customs officers from FLSA coverage. See NTEU Brief at 14–16. The DHS regulations merely added the inspectional personnel from the Department of Agriculture and the Immigration and Naturalization Service to the regulatory definition of "customs officer" and thereby extended the coverage of COPRA to the inspectional personnel of two additional agencies. See DHS Final Rule, 69 Fed.Reg. at 35,229–35,230. Bringing the inspectional personnel from three different agencies into itself, DHS adopted COPRA as the single overtime scheme for the performance of these inspectional services. See id. at 35,230. But the DHS regulations, like COPRA, only preclude customs officers who have received overtime pay for inspectional work under COPRA from receiving compensation under other statutes. Id. at 35,235.

The agency regulations are of limited assistance in interpreting the statutory language at issue here for two reasons. First, the regulatory language is substantially the same as the statutory language that the court must interpret. The court does not find support for an exemption from FLSA in the regulatory text because no clear exemption language is there. Second, even if the agency regulations were found to exempt customs officers from FLSA coverage, the court is not persuaded that the agencies possess the authority to effect such an exemption. Neither Treasury nor DHS has authority to create a FLSA exemption by the promulgation of regulations because FLSA does not confer rulemaking authority on those agencies. See 29 U.S.C. §§ 201–219. While FLSA does give OPM authority "to administer the provisions of [FLSA] with respect to any individual employed by the United States," 29 U.S.C. § 204(f), OPM is limited to "issu[ing] regulations that implement the exemptions enumerated in the FLSA statute," see NTEU Brief at 11, which are to be "narrowly construed" consistent with the statutory presumption under FLSA that coverage exists, see 5 C.F.R. § 551.202(b) (2003) (requiring "[e]xemption criteria [to] be narrowly construed to apply only to those employees who are clearly within the terms and spirit of the exemption").

Defendant seeks also to support its position that plaintiffs are FLSA exempt by pointing to the modification of the SF–50 Notification of Personnel Action Forms shortly after OPM promulgated the 1997 regulations. Def.'s Mot. at 10. Defendant states that the forms—entitled "Exception to SF–50–Approved for Filing in Official Personnel Folder"—are checked in a box marked "FLSA: Exempt" and were placed in each plaintiff's personnel folder. See id.; Def.'s App. at 98 (sample SF–50).

Plaintiffs respond that "[u]nless a Federal employee is covered entirely by another statute, for all work actions, the Federal employee, if non-exempt by FLSA statute, retains coverage under the FSLA." Pls.' Resp. at 7. Plaintiffs assert that the modification of the SF–50 forms is not effective to create a FLSA exemption under 5 C.F.R. § 551.202. Id. at 12–14. Plaintiffs' assertion appears to the court to be correct.

Section 551.202 of Title 5 of the Code of Federal Regulations addresses the necessary considerations "in all exemption determinations." 5 C.F.R. § 551.202. The provision specifically requires that an agency making a determination of exemption from FLSA coverage comply with the following principles:

(a) Each employee is presumed to be FLSA nonexempt unless the employing agency correctly determines that the employee clearly meets one or more of the exemption criteria . . . .

(b) Exemption criteria must be narrowly construed to apply only to those employees who are clearly within the terms and spirit of the exemption.

(c) The burden of proof rest with the agency that asserts the exemption.

(d) An employee who clearly meets the criteria for exemption must be designated

FLSA exempt. If there is a reasonable doubt as to whether an employee meets the criteria for exemption, the employee should be designated FLSA nonexempt

.... [and]

(i) The designation of an employee as FLSA exempt or nonexempt ultimately rests on the duties actually performed by the employee.

*Id.*

Plaintiffs argue that defendant has failed to perform the requisite analysis to determine whether the duties performed by CEOs fit into any established exemption under FSLA. *See* Pls.' Reply at 13. Plaintiffs also argue that defendant has failed to analyze the off-the-clock work performed by CEOs to determine if that work involves the "inspectional work" contemplated by COPRA. *Id.* Nor has defendant, consistent with 5 C.F.R. § 551.202(b), "narrowly construed" the exemption or afforded a FLSA nonexempt designation to an employee as to whom there is a reasonable doubt regarding whether the employee meets the exemption criteria. *Id.*

Defendant does not contest plaintiffs' argument that OPM has not performed an exemption analysis of the CEOs duties. Instead, defendant argues that the decision by Congress to exclude CEOs from receiving overtime compensation under FLSA "obviated any need for Customs [to] determine whether [CEOs] were exempt from receiving overtime pursuant to the exemptions within the FSLA." Def.'s Reply at 13. Defendant explains that OPM did not comply with 5 C.F.R. § 551.202 because that regulation is "inapposite." *Id.*

Based on a review of the regulatory materials, however, it is the court's view that COPRA did not create an exemption that could have relieved defendant of its FLSA obligations. Rather, the court concludes that COPRA and FLSA are mutually compatible regimes covering work "officially assigned," 19 U.S.C. § 267(a)(1), in the case of COPRA, and work "suffer[ed] or permit[ted]," 29 U.S.C. § 203(g), in the case of FLSA.

## C. Whether NTEU's Position in an Arbitration Binds Plaintiffs Here

Defendant urges the court to give preclusive effect to a 2003 arbitration decision in which the NTEU, "the union to which all plaintiffs belong, conceded ... that the FLSA *does not authorize payment of over-*time compensation to CEOs." Def.'s Mot. at 15. Plaintiffs contest both the fact of the concession and the appropriateness of giving any alleged concession preclusive effect under the principle of judicial estoppel. Pls.' Resp. at 14–15.

The issue for determination by the arbitrator was: "Whether Customs ... [CEOs] are entitled under [COPRA] to overtime pay for overtime hours spent attending training at [the Federal Law Enforcement Center] FLETC." Def.'s App. at 2. The arbitrator determined that "newly hired ... CEOs attending entry level training are covered by [the Government Employees Training Act] GETA and are not entitled to overtime pay pursuant to COPRA." *Id.* at 21. The arbitrator also stated that "FLSA does not impact on ... CEO overtime pay because, obviously, these employees are exempt from FLSA coverage." *Id.* at 22.

Noting that several plaintiffs in this case seek compensation for work performed while attending the Canine Enforcement Training Center, Def.'s Mot. at 16 & n.6, defendant asserts that the "arbitrator decided, at least implicitly, the issue before the [c]ourt." Def.'s NTEU Resp. at 21.

Issue preclusion or collateral estoppel bars a party from relitigating an issue necessary to a prior judgment. *United States v. Mendoza,* 464 U.S. 154, 158, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984). The Federal Circuit has stated that preclusion generally applies if:

(1) an issue is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) the resolution of the issue was essential to a final judgment in the first action; and (4) the party defending against issue preclusion had a full and fair opportunity to litigate the issue in the first action.

*Shell Petroleum, Inc. v. United States,* 319 F.3d 1334, 1338 (Fed.Cir.2003).

Defendant contends that the issue presented in this case, specifically, a legal determination as to which statute authorizes overtime compensation to CEOs, "is similar, if not identical" to the issue presented in the arbitration decision. Def.'s Mot. at 16. Defendant asserts that "the statute that authorizes payment of overtime compensation was litigated before the arbitrator," and that the "arbitrator resolved the question of which statute authorized the payment of compensation for employees in initial training." *Id.* at 17. Defendant argues that because "the individual plaintiffs enjoyed the opportunity, through their union, to argue the question as to what statute authorizes the payment of overtime," *id.,* collateral estoppel is appropriate because "[i]ndividuals suffer the burden of judgments rendered against unions to which the individuals belong," *id.* at 18.

Plaintiffs contend that the issue before the arbitrator was not the issue here. Pls.' Resp. at 15. Rather, plaintiffs assert, the arbitration "concerned only the very narrow issue of whether COPRA pay was owed to CEOs ... for basic training at FLETC, or whether another law, GETA, precluded that training pay." [12] *Id.*

It is clear from the text of the arbitrator's decision that the relationship between FLSA and COPRA was not the disputed issue in the case. The arbitrator stated, "For the most part, the arguments concerning the relationship of GETA and COPRA to the FLSA were not material to [the] issue defined by the parties." Def.'s App. at 21–22

(Opinion and Award dated 8/24/2003 in arbitration between CBP and NTEU).

While defendant contends that the issues in the cases "are not required to be identical," Def.'s Reply at 15, that is not the law. A decision acknowledged to be implicit or persuasive, *see* Def.'s Mot. at 16 (stating that the arbitrator's decision is "persuasive" to the issue in this motion), is not sufficient to invoke the doctrine of collateral estoppel, *see Shell Petroleum,* 319 F.3d at 1338 (preventing a party from relitigating an issue that is "identical" to the previously litigated issue and was "actually litigated" in the prior proceeding). The Federal Circuit requires that "an issue [be] identical to one decided in the first action" to merit preclusive effect. *See Shell,* 319 F.3d at 1338. The arbitration decision does not meet the standard for issue preclusion, and the court declines to give preclusive effect to it.

## III. Conclusion

For the foregoing reasons, Defendant's Motion for Judgment upon the Pleadings is DENIED.

IT IS SO ORDERED.

---

**12.** Plaintiffs also argue that:

> [E]ven if the arbitration decision had concerned the relationship of COPRA to the FSLA[,] ... it still could not have a preclusive effect in this case ... because FLSA preempts collective bargaining agreements and the broad rights ... afforded by FLSA cannot be impaired by an arbitration decision arising from a grievance under a collective bargaining agreement.

Pls.' Resp. at 15 (citing *Barrentine v. Arkansas–Best Freight Sys.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (adverse arbitration award pursuant to a grievance procedure in a collective bargaining agreement not given preclusive effect on a FLSA claim)). Plaintiffs state that "[t]he arbitrator, in fact, decided against COPRA's exclusivity" and took the position that GETA, not COPRA, controlled the pay due to the CEOs for hours worked in basic training. *Id.* at 15–16.